IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| VONNIE C. YAWN,            : | | |
|         Plaintiff,    : | | |
| : | | |
| VS.                        : | NO. 5:11-CV-490 (MTT) | |
| : | | |
| MICHAEL J. ASTRUE,         : | SOCIAL SECURITY APPEAL | |
|         Defendant.   : | | |
| _____ : | | |

## RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Vonnie C. Yawn's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Because the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence and is based on proper legal standards, it is hereby **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

At the time of the administrative hearing before the administrative law judge (ALJ), Plaintiff was 42 years old and suffered from anxiety, cervical spine impairment, congestive heart failure, depression, obesity, and sleep apnea. AR 241 (Doc. 11-6). Prior to the alleged onset date of December 19, 2005, Plaintiff worked as a machine operator for the YKK zipper manufacturing center. AR 39, 45 (Doc. 11-2).

On September 18, 2007, Plaintiff applied for disability insurance benefits. AR 144-146 (Doc. 11-5). Plaintiff's application was denied initially and upon reconsideration. AR 96-97 (Doc. 11-3). Following an administrative hearing on February 25, 2010, an Administrative Law Judge (ALJ) issued a written decision finding Plaintiff not disabled. AR 13-22 (Doc. 11-2). The Appeals Council granted Plaintiff's request to review the ALJ's written decision, and the

Appeals Council subsequently issued a written decision modifying the list of jobs that exist in significant numbers in the national economy that Plaintiff could perform and finding Plaintiff not disabled. AR 4-7 (Doc. 11-2). On December 14, 2011, Plaintiff filed the instant appeal. Pl. Compl. (Doc. 1).

## STANDARD OF REVIEW

When reviewing claims brought under the Social Security Act, courts have a very limited role. Review of the Commissioner's decision is restricted to whether the decision "is supported by substantial evidence and based on proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id.

Courts must defer to the Commissioner's factual findings. A reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004), quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner, and not to a reviewing court. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). Moreover, the Commissioner, and not a reviewing court, is charged with resolving conflicts in the evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). A reviewing court must scrutinize the complete administrative record to determine the reasonableness of the Commissioner's factual findings. Bloodsworth, 703 F.2d at 1239. Even if the evidence preponderates against the Commissioner's decision, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id.

The Commissioner's conclusions of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. Harrell v. Harris, 610

F.2d 355, 359 (5th Cir. 1980).[1] Unlike the Commissioner's findings of fact, "'no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims.'" Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), quoting Smith v. Schweiker, 646 F.2d 1075, 1076 (5th Cir. 1981). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine whether the correct legal standards have been applied is grounds for reversal. Wiggins, 679 F.2d at 1389.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of proving her disability. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

When analyzing the issue of disability, the Commissioner must follow a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520(a)(4)(i)-(v); 20 C.F.R. § 416.920(a)(4)(i)-(v). First, the Commissioner determines whether the claimant currently is engaged in substantial gainful activity. Second, the Commissioner considers the medical severity of the claimant's impairments. Third, the Commissioner considers whether the medical severity of the claimant's impairments meets or equals the severity of one or more of the specified impairments in the listing of impairments and meets the duration requirement.

The Commissioner next assesses the claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §

---

[1] In Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered before October 1, 1981.

404.1545(a)(1). Fourth, based on the RFC assessment, the Commissioner evaluates the claimant's ability to return to past relevant work despite the claimant's impairments. Fifth, the Commissioner determines whether there are a sufficient number of jobs in the national economy that the claimant can perform in light of the RFC, age, education, and work experience.

## DISCUSSION

The Commissioner's decision must be affirmed in this case because the determination that Plaintiff is not disabled is supported by substantial evidence and based on proper legal standards. Plaintiff appeals the Commissioner's decision on two grounds. First, Plaintiff alleges that the RFC assessment is not supported by substantial evidence because the ALJ erred when assessing Plaintiff's physical and mental limitations. Second, Plaintiff contends that the ALJ's assessment of Plaintiff's credibility is flawed. As discussed below, however, there is sufficient evidence in the record to support the findings of the ALJ and the Appeals Council regarding both Plaintiff's RFC and Plaintiff's credibility.

### Findings of the ALJ and the Appeals Council

At step one of the five-step sequential evaluation procedure, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of December 19, 2005 to the date last insured of December 31, 2011. AR 15 (Doc. 11-2). At step two, the ALJ concluded that Plaintiff suffered from the severe impairments of anxiety, cervical spine impairment, congestive heart failure, depression, obesity, and sleep apnea. Id. The ALJ also found that Plaintiff suffered from the non-severe impairments of chronic pain, diabetes, and spurs. Id. At step three, the ALJ determined that Plaintiff's impairments did not, alone or in combination, meet or medically equal any of the impairments listed in Appendix 1 to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations (20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526). AR 15-16 (Doc. 11-2). The Appeals Council agreed with the ALJ's findings at steps one, two, and three of the sequential evaluation process. AR 5 (Doc. 11-2). The Appeals Council also considered Plaintiff's statements concerning her subjective complaints and adopted the ALJ's conclusions in that regard. Id.

Consequently, but before moving to step four, the ALJ considered Plaintiff's residual functional capacity. The ALJ concluded that Plaintiff had the RFC to perform "light work" as the term is defined in 20 C.F.R. § 404.1567(b) with exceptions. AR 16-20 (Doc. 11-2). More specifically, Plaintiff could lift or carry twenty pounds occasionally and lift or carry ten pounds frequently. Plaintiff also could sit, or stand and walk, for six hours of an eight hour workday. Plaintiff's ability to push or pull was limited to occasionally in her lower extremities. Plaintiff could stoop frequently, and Plaintiff could balance, kneel, crouch, crawl, or climb ramps and stairs occasionally. Even so, Plaintiff could never climb ladders, ropes, or scaffolds. In addition, Plaintiff had no manipulative, visual, or communicative limitations. Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, gases, poor ventilation, etc., and Plaintiff should also avoid hazards such as machinery and heights. Further, Plaintiff should avoid work with the public or in the stress of close coordination with others. Finally, Plaintiff could understand and concentrate on simple instructions. The Appeals Council adopted the findings of the ALJ concerning Plaintiff's RFC for the reasons set forth in the ALJ's written decision. AR 5 (Doc. 11-2).

At step four, both the ALJ and the Appeals Council found that Plaintiff was not able to perform any past relevant work. AR 6, 20 (Doc. 11-2). At step five, both the ALJ and the Appeals Council determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed in light of Plaintiff's RFC, age, education,

and work experience. AR 7, 21 (Doc. 11-2). The Appeals Council, however, modified the list of representative occupations identified by the ALJ to include the following three representative occupations: Final Assembler, Laundry Sorter, and Stamper/Labeler as opposed to Cashier II, Ticket Seller, and Ticket Taker. Id.

Plaintiff's RFC

Plaintiff argues that the ALJ erred in several ways when assessing Plaintiff's physical and mental limitations. Pl. Brief (Doc. 12 at 9-15). According to Plaintiff, the RFC assessment is based on an inaccurate assessment of the evidence. Plaintiff also alleges that the RFC assessment fails to adequately account for the limitations imposed by Dr. Hutchings, Dr. McDaniel, and Dr. Gore, all to whom provided medical opinions to which the ALJ assigned great weight. In addition, Plaintiff argues that the RFC assessment fails to accurately reflect the limitations imposed by Plaintiff's severe impairments particularly, her cervical spine impairment and her obesity. Plaintiff further alleges that the ALJ erroneously assumed that Plaintiff could perform "simple work" despite finding that Plaintiff had moderate difficulties with concentration, persistence, or pace. Plaintiff therefore contends that the ALJ's finding that Plaintiff has the RFC to perform light work with exceptions is not supported by substantial evidence.

Generally, the RFC assessment refers to "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." Lewis, 125 F.3d at 1440, citing 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing and making a finding about Plaintiff's RFC based on all the relevant medical and other evidence in the administrative record. 20 CFR § 404.1520(e); 20 CFR § 404.1546(c). Evidence used in the RFC assessment includes evidence such as: medical evidence, lay evidence, recorded observations, and reports of daily activities. SSR 96-8P. When assessing Plaintiff's RFC, the

ALJ considers Plaintiff's ability to satisfy the physical, mental, and other requirements of work. 20 CFR § 404.1545(a)(4); 20 CFR § 404.1545(b)-(d). The ALJ's RFC finding is conclusive if supported by substantial evidence. See Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005).

In this case, the ALJ properly assessed all of the relevant evidence concerning Plaintiff's physical and mental limitations before finding that Plaintiff has the RFC to perform light work with exceptions. More specifically, after outlining the proper legal standards, the ALJ provided a detailed account of Plaintiff's allegations about the various conditions that limited her ability to work. The ALJ correctly noted, for example, that Plaintiff reported that her ability to work was limited by back pain, neck pain, congestive heart failure, diabetes, spurs, and sleep apnea. AR 17 (Doc. 11-2); AR 171 (Doc. 11-6). The ALJ also accurately described the ways in which Plaintiff claimed that her conditions limited her ability to work, such as being unable to sit or stand for extended periods and having to sleep sitting up. Id.

Review of the complete administrative record establishes that the ALJ properly evaluated the relevant lay evidence. For example, the ALJ correctly summarized the third party function report written by Plaintiff's sister insofar as Plaintiff's sister reported that Plaintiff could drive a car, ride in a car, shop in stores, pay bills, watch television, play board games, and talk on the telephone. AR 17 (Doc. 11-2); AR 201-202 (Doc. 11-6). Plaintiff is correct that the ALJ mistakenly stated that Plaintiff's sister reported Plaintiff could care for her children and pets. AR 17 (Doc. 11-2). In fact, Plaintiff's sister reported that Plaintiff's mother and husband "tend to most of the family['s] needs at this time." AR 199 (Doc. 11-6). Aside from this single misstatement, the ALJ accurately recounted the other lay evidence in the record, including, the function report written by Plaintiff, in which Plaintiff reported that she could prepare her own meals and that she read and watched television every day. AR 208, 210 (Doc. 11-6).

The ALJ also accurately detailed Plaintiff's testimony at the administrative hearing. AR 17-20 (Doc. 11-2). Plaintiff testified that her back was her primary problem and that her level of back pain was 6 or 7 on a scale of 1 to 10, with 10 being the worst pain. AR 46-49 (Doc. 11-2). Plaintiff also described experiencing neck pain, shoulder pain, and headaches. Id. When asked about her depression, Plaintiff testified that "I think I have a hold on it somewhat, but yeah." AR 63 (Doc. 11-2). When asked whether she had any problems being around people, following instructions, or similar kinds of issues, Plaintiff replied, "I don't think so." AR 64 (Doc. 11-2). Plaintiff testified that she could perform chores and housework periodically, including: hanging up laundry, preparing meals, cleaning up after her children, sweeping the kitchen floor, and shopping in stores. AR 46, 48, 54, 55, 61 (Doc. 11-2). Plaintiff stated that she attended about "half" of her children's basketball games and a few of their baseball and football games "depending on what kind of day I've had." AR 58-59 (Doc. 11-2). Plaintiff testified that she attended church as well. AR 62 (Doc. 11-2).

Review of the complete administrative record further establishes that the ALJ properly assessed the medical records detailing the medical treatments sought by Plaintiff. For example, in February 2006, Plaintiff sought treatment at the Georgia Neurological Institute at which time her MRI scan revealed a large disc extrusion at C4-C5 with cord compression. AR 267-268 (Doc. 11-7). On February 23, 2006, Dr. Johnston performed a C4-C5 anterior discectomy and fusion with allograft, C4-C5 anterior plating with Smisson system, and an intraoperative EMG, MEP, and SSEP monitoring. AR 263-266 (Doc. 11-7). When Plaintiff continued to complain about experiencing back pain after the cervical fusion procedure, the results of Plaintiff's lumbar myelogram were negative, and there was no indication of disc extrusion or significant canal compromise in Plaintiff's follow-up CT scan. AR 250 (Doc. 11-7). Dr. Johnston determined that

there was no evidence of any other issue requiring surgical intervention and concluded that Plaintiff was "doing very well from her cervical fusion." Id. Even so, Dr. Johnston referred Plaintiff to a pain management clinic to address her continued complaints. Id.

In November 2007, Plaintiff sought treatment at Forsyth Street Orthopedic Surgery and Rehabilitation Center at which time x-rays revealed a large posterior bone spur at the Achilles tendon insertion of Plaintiff's right heel. AR 403 (Doc. 11-8). On December 28, 2007, Dr. Slappey performed an Achilles traction spur excision and Haglund's deformity excision on Plaintiff's right heel. AR 400-401 (Doc. 11-8). When Plaintiff continued to complain about foot pain after the procedure, there was minimal swelling but no signs of infection, and Plaintiff displayed good range of motion in her ankle. AR 395 (Doc. 11-8). Dr. Slappey advised Plaintiff to participate in physical therapy, stretch, and ice her foot nightly. Id.

Plaintiff's medical records further establish that Plaintiff received multiple epidural steroid injections to manage her pain between 2006 and 2008. AR 405-440 (Doc. 11-8). In addition, Plaintiff received psychiatric treatment from Dr. Figueroa from March 2008 to October 2008. AR 470-476 (Doc. 11-8). Dr. Figueroa diagnosed Plaintiff with depression and treated Plaintiff with Zoloft, Lexapro, Cymbalta, Desyrel, and Ativan. Id. By June 2008, Plaintiff reported significant improvements in her mood, and Dr. Figueroa concluded that Plaintiff's "condition is improving." AR 471 (Doc. 11-8).

In addition, review of the complete administrative record establishes that the ALJ assessed the relevant medical opinions concerning Plaintiff's limitations based on proper legal standards. For example, the ALJ considered the physical RFC assessment performed by Dr. Bittinger in April 2008, which concluded that Plaintiff was limited to a medium exertion level. AR 18 (Doc. 11-2). According to Dr. Bittinger, Plaintiff had certain exertional and postural

limitations, but Plaintiff had no manipulative, visual, communicative, or environmental limitations. AR 366-373 (Doc. 11-7). The ALJ determined that Dr. Bittinger's assessment would receive little weight because a light exertional level, and not a medium exertional level, was warranted "after taking testimony, reviewing a complete record, and observing the claimant first-hand." AR 18 (Doc. 11-2). By contrast, the ALJ determined that the physical RFC assessment performed by Dr. Kelso in August 2008, which concluded that Plaintiff was limited to a light exertional level, would receive great weight because Dr. Kelso's assessment was "supported by the objective facts." AR 18 (Doc. 11-2); AR 446-453 (Doc. 11-8). In so doing, the ALJ weighed both of the medical opinions based on proper legal standards because a medical opinion generally merits less weight when the source fails to identify relevant evidence to support the source's opinion or when the medical opinion is inconsistent with the other evidence in the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4).

      The ALJ also properly assessed the medical opinion of Dr. Hutchings. In April 2008, Dr. Hutchings examined Plaintiff and completed a cardiac questionnaire, which found that Plaintiff had congestive heart failure with dyspnea. AR 18 (Doc. 11-2); AR 341 (Doc. 11-7). According to the cardiac questionnaire, Plaintiff reported that she would experience precipitating symptoms if she walked one block or climbed one flight of stairs. AR 341 (Doc. 11-7). Dr. Hutchings also completed a range of motion questionnaire, concluding that Plaintiff's active range of motion was normal. AR 342-344 (Doc. 11-7). The ALJ determined that Dr. Hutchings' opinion would receive great weight and stated that Plaintiff's limitations have been accommodated in the RFC assessment. AR 18 (Doc. 11-2). By assigning great weight to Dr. Hutchings' medical opinion, the ALJ acted in accordance with proper legal standards because a medical opinion receives more weight when the source examines the claimant. 20 C.F.R. § 404.1527(c)(1).

Although Plaintiff argues that the RFC assessment does not adequately account for the specific limitations imposed by Dr. Hutchings, Plaintiff's argument is not supported by the record. Upon review of Dr. Hutchings' complete medical opinion, it does not appear that Dr. Hutchings concluded that Plaintiff's limitations necessarily preclude Plaintiff from walking one block or climbing one flight of stairs. AR 335-346 (Doc. 11-7). Rather, Dr. Hutchings seems to have summarized Plaintiff's description of her precipitating symptoms on the cardiac questionnaire, namely that she "can walk about one block and then has to stop at rest" and that she "can climb one flight of stairs and has to stop and rest." AR 335, 341 (Doc. 11-7). Moreover, the RFC assessment provides that Plaintiff could sit for six hours of an eight hour workday and that Plaintiff could climb ramps and stairs only occasionally. AR 16 (Doc. 11-2). Accordingly, there is no basis to conclude that the RFC assessment is incongruous with Dr. Hutchings' opinion.

The ALJ also properly assessed the medical opinion of Dr. McDaniel. In September 2008, Dr. McDaniel performed a psychological examination of Plaintiff. AR 18-19 (Doc. 11-2); AR 454-455 (Doc. 11-8). Dr. McDaniel concluded that Plaintiff was experiencing both "anxiety disorder due to chronic pain" and "mood disorder due to chronic pain, with depressive features." AR 454-455 (Doc. 11-8). According to Dr. McDaniel, Plaintiff reported that she "drives [her children] to school daily and is involved in many of their activities" and that she "perform[s] all self-care and personal hygiene responsibilities independently." Id. In addition, Plaintiff reported that she performed many household chores, including cooking meals, laundering clothes, and washing dishes when her pain was not severe. Id. The ALJ determined that Dr. McDaniel's medical opinion would receive great weight and stated that Plaintiff's limitations have been accommodated in the RFC assessment. AR 19 (Doc. 11-2). By assigning great weight to Dr.

McDaniel's medical opinion, the ALJ acted in accordance with proper legal standards because a medical opinion receives more weight when the source examines the claimant and when the source's opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(1), (4).

Plaintiff argues that the RFC assessment does not adequately account for Dr. McDaniel's medical opinion because Dr. McDaniel concluded that Plaintiff's anxiety and mood disorders were due to "chronic pain." The ALJ found that Plaintiff suffered from the severe impairments of anxiety, cervical spine impairment, congestive heart failure, depression, obesity, and sleep apnea and that Plaintiff suffered from the non-severe impairments of chronic pain, diabetes, and spurs. AR 15 (Doc. 11-2). In other words, the ALJ found that Plaintiff suffered from the severe impairments of depression and anxiety, the same two impairments that Dr. McDaniel diagnosed after performing a psychological evaluation of Plaintiff. AR 15 (Doc. 11-2); AR 455 (Doc. 11-8). Contrary to Plaintiff's argument, the ALJ did not err by failing to treat Plaintiff's chronic pain as a separate severe impairment because Dr. McDaniel never diagnosed Plaintiff's chronic pain as a separate severe impairment. AR 454-455 (Doc. 11-8). Instead, Dr. McDaniel discussed Plaintiff's chronic pain only in relation to Plaintiff's anxiety and depression, which Dr. McDaniel described as an "anxiety disorder due to chronic pain" and a "mood disorder due to chronic pain, with depressive features" respectively. AR 455 (Doc. 11-8).[2]

Plaintiff also argues that the RFC assessment does not adequately account for Dr. McDaniel's medical opinion because the ALJ did not sufficiently explain how the RFC assessment accommodated Plaintiff's pain levels. Plaintiff, however, fails to identify any specific evidence in Dr. McDaniel's medical opinion or elsewhere in the record tending to show that the RFC assessment failed to accommodate Plaintiff's pain levels. Review of the complete

---

[2] By contrast, Dr. McDaniel also concluded that Plaintiff was experiencing "pain disorder due to her cervical vertebral injury, congestive heart failure, diabetes, sleep apnea, and migraine headaches." AR 455 (Doc. 11-8).

12

administrative record, as discussed in the next section of this Recommendation, confirms the ALJ properly considered all relevant evidence concerning Plaintiff's pain and other symptoms. It further appears that the ALJ adequately accounted for Plaintiff's pain levels through the numerous exertional, postural, and environmental limitations set forth in the RFC assessment. AR 16-17 (Doc. 11-2). Accordingly, there is no basis to conclude that the RFC assessment is incongruous with Dr. McDaniel's medical opinion.

In addition, the ALJ properly assessed the medical opinion of Dr. Gore. In May 2008, Dr. Gore completed a psychiatric review technique, which concluded that Plaintiff suffered from depression. AR 352-365 (Doc. 11-7). According to Dr. Gore, Plaintiff had mild functional limitations with daily living activities but moderate functional limitations with maintaining social functioning and with maintaining concentration, persistence, or pace. AR 362 (Doc. 11-7). Dr. Gore further found that Plaintiff had experienced no episodes of decompensation of extended duration. Id. Also in May 2008, Dr. Gore completed a mental RFC assessment of Plaintiff, which concluded that Plaintiff had depression but that Plaintiff had either "not significantly limited" or "moderately limited" mental activities in all areas. AR 374-377 (Doc. 11-7). The ALJ determined that Dr. Gore's medical opinion would receive great weight because his opinion was "supported by the objective evidence." AR 19 (Doc. 11-2).

By contrast, according to the psychiatric review technique completed by Dr. Ude in October 2008, Plaintiff had no severe impairments and mild functional limitations in all areas. AR 456-469 (Doc. 11-8). The ALJ determined that Dr. Ude's medical opinion would receive little weight because it was less persuasive than Dr. Gore's medical opinion, and because Plaintiff "is obviously more limited" than Dr. Ude found. AR 19 (Doc. 11-2). In so doing, the ALJ weighed both of the medical opinions based on proper legal standards because a medical

opinion generally merits less weight when the source fails to identify relevant evidence to support the source's opinion or when the medical opinion is inconsistent with the other evidence in the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4).

Plaintiff argues that the ALJ erred by not including a specific limitation to nonstressful work in the RFC assessment as imposed by Dr. Gore. Plaintiff correctly notes that Dr. Gore specifically recommended that Plaintiff "should not work with the public or in the stress of close coordination with others[.]" AR 376 (Doc. 11-7). Plaintiff, however, incorrectly alleges that the RFC assessment does not contain a specific limitation to nonstressful work. The RFC assessment expressly provides that "[t]he claimant must avoid work with the public or in the stress of close coordination with others." AR 16 (Doc. 11-2). Therefore, Plaintiff's argument about the RFC assessment not including a specific limitation to nonstressful work as detailed in Dr. Gore's medical opinion is not supported by the record.

Regarding Plaintiff's mental limitations, Plaintiff alleges that the ALJ erroneously assumed that Plaintiff could perform "simple work" despite finding that Plaintiff had moderate difficulties with maintaining concentration, persistence, or pace. Dr. Gore opined that Plaintiff's ability to both understand and carry out simple instructions was "not significantly limited" and that Plaintiff's ability to maintain attention and concentration for extended periods was "moderately limited." AR 374-376 (Doc. 11-7). Dr. Gore also found that Plaintiff "can follow rules and remember simple 1 or 2 step instructions" and that Plaintiff "can attend to simple, repetitive tasks for two hour blocks of time forty hours per week without significant interference from [her] psychiatric symptoms." Id. In addition, Dr. Gore found that Plaintiff "should not work with the public or in the stress of close coordination with others, but can work in the presence of others and accept supervision and feedback regarding performance within a nonstressful

14

routine." Id. The ALJ's hypothetical questions to the vocational expert were fully consistent with Dr. Gore's medical opinion and expressly incorporated both Dr. Gore's finding that Plaintiff is able to understand and carry out simple instructions and Dr. Gore's finding that Plaintiff must avoid working with the public or in the stress of close coordination with others. AR 80-84 (Doc. 11-2). Because the medical evidence suggests that Plaintiff can engage in simple repetitive tasks despite experiencing moderate limitations with concentration, persistence, or pace, and because the ALJ's hypothetical questions to the vocational expert adequately account for Plaintiff's limitations in a manner consistent with the medical evidence, the facts presented here are distinguishable from the facts presented in Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180-1181 (11th Cir. 2011).

    Regarding Plaintiff's physical limitations, Plaintiff contends that the RFC assessment fails to accurately reflect the limitations imposed by Plaintiff's severe impairments, particularly her cervical spine impairment and her obesity. Regarding her cervical spine impairment, Plaintiff argues that the ALJ did not adequately explain why the RFC assessment did not impose limitations on Plaintiff's ability to reach or handle even though the ALJ found that Plaintiff's cervical spine impairment was a severe impairment. Regarding her obesity, Plaintiff argues that the ALJ did not sufficiently explain how Plaintiff's obesity limited Plaintiff's ability to function individually or combined with Plaintiff's other severe impairments. "However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." Moore, 405 F.3d at 1213, n. 6. Insofar as Plaintiff argues that Plaintiff could not reach or handle frequently because of her cervical spine impairment and that Plaintiff's BMI of 44.4 indicates that Plaintiff's obesity could affect her other physical and mental limitations, Plaintiff's contentions misunderstand "the narrowly

circumscribed nature" of judicial review in cases brought under the Social Security Act. Id. at 1213. Courts are precluded from "'re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] [...] even if the evidence preponderates against' the decision." Id., quoting Bloodsworth, 703 F.2d at 1239.

After scrutinizing the complete administrative record, it appears that the ALJ properly assessed all of the relevant evidence concerning Plaintiff's physical and mental limitations before finding that Plaintiff had the RFC to perform "light work" as the term is defined in 20 C.F.R. § 404.1567(b) with certain exceptions. Because the RFC assessment made by the ALJ and adopted by the Appeals Council is supported by substantial evidence and based on proper legal standards, there is no basis to disturb this finding.

Plaintiff's Credibility

Plaintiff next argues that the ALJ erred when assessing Plaintiff's credibility. Pl. Brief (Doc. 12 at 15-19). According to Plaintiff, the ALJ's credibility determination is based on an inaccurate assessment of Plaintiff's daily activities. Plaintiff also alleges that the ALJ failed to comply with SSR 96-7P insofar as the ALJ did not fully consider Plaintiff's efforts to try various pain treatments as evidence tending to bolster Plaintiff's allegations of intense and persistent pain symptoms. In addition, Plaintiff alleges that the ALJ wrongly implied that Plaintiff was not compliant with her doctors' recommendations and that the ALJ misstated the evidence about whether the Achilles traction spur excision involved the cutting of Plaintiff's right heel. Plaintiff therefore contends that the ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence.

Contrary to Plaintiff's arguments, the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence. Where, as here, Plaintiff testified about experiencing

persistent pain and other symptoms, the ALJ is responsible for considering all of Plaintiff's symptoms, including her complaints of pain, and the extent to which her symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). In addition, 20 C.F.R. § 404.1529(a) provides in pertinent part that:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

To establish disability on based on pain and other symptoms, the claimant must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence conforming the severity of the alleged pain, or (b) that the objectively determinable medical condition can reasonably be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). When there is evidence that an impairment could reasonably be expected to produce the symptoms alleged by the claimant, the ALJ considers objective medical evidence and information from the claimant and treating or examining physicians, as well as factors such as evidence of daily activities, medications taken, and any other aggravating factors. 20 C.F.R. § 404.1529.

Moreover, it is well-established that credibility determinations are left to the Commissioner, and not to a reviewing court. Carnes, 936 F.2d at 1219. Regarding credibility, SSR 96-7p specifically states that:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant

> evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

That is, the ALJ must "clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks and citation omitted). While "[t]he credibility determination does not need to cite particular phrases or formulations," it must sufficiently indicate that the ALJ considered Plaintiff's medical condition as a whole. Id.

In this case, the ALJ specifically found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above [RFC] assessment." AR 20 (Doc. 11-2). The ALJ's credibility determination sufficiently indicates that the ALJ considered Plaintiff's medical condition as a whole before finding that Plaintiff's testimony regarding her pain and other symptoms were partially credible. As discussed in the previous section of this Recommendation, the ALJ thoroughly and properly evaluated all of the relevant evidence concerning Plaintiff's physical and mental limitations, including, but not limited to, lay evidence from Plaintiff and Plaintiff's sister, Plaintiff's testimony at the administrative hearing, objective medical evidence in the form of medical records for specific treatments sought by Plaintiff to alleviate her pain symptoms, and the medical opinions of numerous doctors. The ALJ's assessment of Plaintiff's credibility is consistent with the relevant evidence, and Plaintiff's arguments to the contrary must be rejected because they suggest that the reviewing court should reweigh the evidence or supplant the credibility determination made by the Commissioner. See Moore, 405 F.3d at 1213; Carnes, 936 F.2d at 1219. Because the assessment of Plaintiff's

credibility made by the ALJ and adopted by the Appeals Council is supported by substantial evidence and based on proper legal standards, there is no basis to disturb this finding.

## CONCLUSION

Because the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence and based on proper legal standards, and because careful consideration of the complete administrative record establishes that there is sufficient evidence to support the findings of the ALJ and the Appeals Council regarding Plaintiff's RFC and Plaintiff's credibility, **IT IS HEREBY RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 28th day of February, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge